# Latch v. West End Trust Company, Appellant.

*Principal and agent—Investments—Mortgage—Assignments—Fraud.*

Where an agent for investing money having entire charge of his principal's investments and papers, receives a payment on account of the principal of a mortgage, and invests the same in his own name in another mortgage which he assigns to his principal without informing the latter of the fact, and the assignment is not witnessed or acknowledged, and thereafter the agent assigns the same mortgage to himself and another person as trustees of an estate, and this assignment is witnessed and acknowledged, and both assignments are found amongst the papers of the agent after his death, the first assignment will prevail over the second assignment.

Argued Oct. 17, 1906.   Appeal, No. 151, Oct. T., 1906, by defendant, from judgment of C. P. No. 4, Phila. Co., June T.,

1904, No. 1,489, on verdict for plaintiff in case of William Walter Latch, surviving Executor of Charles Latch, deceased, v. West End Trust Company, substituted Trustee of Henry Bickley, deceased.    Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.    Affirmed.

Scire facias sur mortgage.

Issue to determine the ownership of bond represented by the mortgage.

At the trial it appeared that the suit was begun by a scire sur mortgage against Anthony Koon, the mortgagor.    The heirs of Anthony Koon petitioned the court for leave to pay the amount due on the mortgage into court, alleging that William Walter Latch, executor of Charles Latch, also claimed title to the mortgage.    Whereupon the court ordered the amount due on the mortgage to be paid into court, and awarded an issue to be framed and tried between William Walter Latch, executor of Charles Latch, plaintiff, and The West End Trust Company, trustee under the will of Henry Bickley, deceased, defendant, in order to determine who was entitled to the proceeds of the mortgage paid into court.

Other facts appear by the opinion of the Superior Court.

At the trial the following offer was made by counsel for the plaintiff :

Mr. Yeakle : I offer in evidence paper which the plaintiff contends is the assignment of the said mortgage to Charles Latch, signed by Silas Jones, under seal, as trustee for Mabel Davis, under the will of George W. Davis, deceased, together with the marginal note, also signed by Silas Jones.    The execution of this paper and the marginal note by Silas Jones is admitted, and also that both the paper and the marginal note are in the handwriting of Silas Jones.

Mr. Jones : I admit the signing by Mr. Jones of both of these papers, but I object to the introduction of this so-called assignment or document without proof that it was delivered to Charles Latch, or that some knowledge of the existence of such document came to Charles Latch.

The Court : I will admit it for the present.    The effect of it will hereafter be determined.

Exception noted for defendant by direction of the court. [3]

Assignment read by Mr. Yeakle as follows :

" I, Silas Jones, trustee of Mable Davis, under will of Geo. W. Davis, dec'd, for the consideration of one thousand dollars to me paid by Chas. Latch, of Lower Merion, Montgomery Co., Pa., do grant, bargain, assign, transfer and set over unto him, his heirs, executors, adminis. and assigns, a certain mortgage given and executed by Anthony Koon to Geo. W. Davis, dated Oct. 24, 1878. Rec'd in Mtge. Bk. D. H. L. No. 262, page 345, etc., to secure the payt. of one thousand dollars, secured upon a lot of ground southeast side of Ripka Ave. the distance of 90 ft. N. E. of Chestnut street, 21st ward, Phila., in said mortgage particularly described and assigned to me by the executor of Geo. W. Davis, by assgt. dated April 11, 1887, rec'd in Assgt. of Mortge. Bk. No. 62, p. 92, etc. Also the bond and obligation in the sd. mortge. mentioned and all moneys, both principal and interest, due and to become due thereon, together with all rights, revenue, incidents thereto and all my right, title, int., property claim and demand to the same.

" Witness my hand and seal Feby. 9, 1896.

" SILAS JONES, [Seal.]

" Trustee for Mabel Davis, under the will of George W. Davis, dec'd."

(Written on margin) :

" Mabel Davis have been paid off in full, this mortgage belonged to me, and having no other investment at the time I put the one thousand dollars which Watson Wilde paid off on his mortgage I invested in this until such times as I could get another mortge.  SILAS JONES."

The court charged in part as follows :

[If there had been no change in Jones's relations to that mortgage by reason of his investing the money in something else, then because of his having appropriated it for the benefit of Latch and having assumed to hold it for the benefit of Latch, and having executed the paper, which can be regarded as a declaration of trust in favor of Latch, he was disabled, notwithstanding he had a cotrustee, from taking it as a trustee for any estate, and acquiring a good title to it for the benefit of that estate.] [4]

[He is the only one representing the Bickley estate that seems to have had anything to do with the matter.  If the facts are what I have outlined to you, he (Jones) had knowledge that that mortgage was Latch's mortgage.  Mr. Gillin, who apparently trusted him implicitly, did not know that that mortgage, in point of fact, had ever been taken by the Bickley estate until after Silas Jones's death.  If Jones, the active trustee, had knowledge of the fact that this mortgage was held by him in trust for the benefit of the Latch estate, he could not acquire title for the Bickley estate.] [5]

[He (Jones) had a $1,000 mortgage which appears to have belonged to him, which had been assigned to him by the representatives of some estate.  Then he drew up, wrote out himself and signed, what is termed an assignment of that mortgage to Charles Latch, and wrote upon the margin of it what amounts to this, that he took the $1,000 which came to him on account of the Wilde mortgage and put it in that $1,000 mortgage. He said something about intending to make that investment, unless he found something better.  That assignment of the mortgage was found among his papers after his death, and was turned over to the Latch estate, along, as I understand it, with the other papers which belonged to that estate.] [6]

Verdict and judgment for plaintiff.  Defendant appealed.

*Errors assigned* were (3) rulings on evidence, quoting the bill of exceptions; (4–6) above instructions, quoting them.

*G. Von Phul Jones,* for appellant.—The document under which plaintiff claims is not an assignment : Googe v. Gaskill, 18 Pa. Superior Ct. 39 ; Slaymaker v. Herr, 12 Lancaster Law Rev. 342 ; Hays v. Lynn, 7 Watts, 524 ; R. R. Co. v. Egbert, 152 Pa. 53 ; Unruh v. Lukens, 166 Pa. 324 ; Boardman v. Dean, 34 Pa. 252.

The document under which plaintiff claims is not a declaration of trust : Smith's Estate, 144 Pa. 428 ; Gaffney's Est., 146 Pa. 49 ; Grant v. Levan, 4 Pa. 393 ; Hays v. Quay, 68 Pa. 263 ; Girard Trust Co. v. Mellor, 156 Pa. 579.

It was while Jones was acting as agent for Latch and the Latch estate only, and not for the Bickley estate, that the fraud was perpetrated.  Such being the case, they cannot visit the

fraudulent acts of their agent upon the Bickley estate, who by chance happened to employ their agent at some subsequent time : Hood v. Fahnestock, 8 Watts, 489 ; Bracken v. Miller, 4 W. & S. 102 ; Martin v. Jackson, 27 Pa. 504 ; Houseman v. Bldg. & Loan Assn., 81 Pa. 256 ; Peabody Bldg. Assn. v. Houseman, 7 W. N. C. 193 ; Wilson v. Bank, 7 Atl. Repr. 145 ; Barbour v. Wiehle, 19 W. N. C. 469 ; Taylor v. Gitt, 10 Pa. 428 ; Mott v. Clark, 9 Pa. 399 ; Mullison's Est., 68 Pa. 212 ; Metzgar v. Metzgar, 1 Rawle, 227 ; Pepper v. Cairns, 133 Pa. 114.

The Latch estate must suffer because it supplied the means for the fraud : Brumbach v. McLean, 187 Pa. 602.

*J. Morris Yeakle*, for appellee.—When Jones, seventy days before his death, took from himself as trustee for Mabel Davis an assignment of this mortgage to himself and Gillen as co-trustees of the Bickley estate, he had knowledge that that mortgage had seven years before been assigned by himself as trustee for Mabel Davis to Charles Latch, his client. During three years of the time he was a trustee for the Bickley estate he had been collecting the interest on the mortgage and paying it to Charles Latch. That postpones the Bickley assignment to the Latch assignment and gives Latch the fund.

Jones's knowledge was notice : Bank of U. S. v. Davis, 2 Hill, 451 ; Fisher's Est., 7 Pa. C. C. Rep. 17 ; Distilled Spirits, 78 U. S. 356 ; Henry v. Raiman, 25 Pa. 354 ; Leiman's Est., 32 Maryland, 225 ; Blatchley v. Osborn, 33 Conn. 226 ; LeNeve v. LeNeve, 2 White & Tudor Lead. Cas. Eq. 35 ; Chapman v. Chapman, 91 Va. 397 (21 S. E. Repr. 813) ; Myers v. Ross, 40 Tenn. 59 ; Willes v. Greenhill, 4 De Gex, F. & J. 147.

OPINION BY HENDERSON, J., February 25, 1907 :

The evidence makes it clear that as between Jones and the estate of Charles Latch the Mabel Davis mortgage belonged to the latter. Jones had been for about twenty-eight years the attorney of Latch, attending to all his business, and while so acting made many investments of money for his client; collected interest ; reinvested loans and had in his possession papers belonging to his client. No one disputes his ownership of the Mabel Davis mortgage. The contestants here both claim

through him.  It is proved that he collected on the Wilde mortgage $1,000 for Latch, and the memorandum on his assignment as trustee for Mabel Davis to Charles Latch, executed February 9, 1896, contains his written admission that this amount was the consideration for the assignment of the mortgage to Latch. Moreover, the assignment recites the receipt of $1,000 as the consideration therefor.   The assignment with other papers belonging to the Latch estate were found among the papers of Jones after his death.   The assignment of the mortgage to James J. Gillin and Silas Jones, executors and trustees under the will of Henry Bickley under which the appellant claims, was not made until February 20, 1903.   Jones transacted the business with reference to this assignment.   Gillin had no knowledge of the particular mortgage, but was told by Jones that he had a good mortgage and wanted the Bickley estate to get it.   The assignment was found in Jones' office in the Bickley safe after Jones' death.  The question whether the document under which the plaintiff claims is an assignment is not open to persuasive discussion.   It has all the essential words of an assignment and is under seal.   It is not contended by the appellee that the memorandum indorsed thereon transferred the mortgage, or that it is a declaration of trust.   It is the history of the transaction, probably made by Jones to show the origin of the fund which was the consideration for the assignment. The paper under which the appellant claims is similar in form to that presented by the appellee, and is no more efficient than the other.   It contained an acknowledgment and bore the name of a witness, but these did not make the document more available in transferring the title.   The case turns, therefore, on the relation which Jones bore to the two transactions.   In the first he transferred as owner to his client.   In the second he transferred as trustee to himself and another acting as executors and trustees of the Bickley estate.   His cotrustee committed the transaction of the business to him without direction or knowledge as to the particular investment to be made.   Jones thus became the medium through which the Bickley assignment was acquired.   It is true his knowledge was obtained before he became trustee for the Bickley estate, but it was nearly three years afterward that the assignment was made and in the meantime Jones had been paying to Latch interest on the money he

had received from Wilde and which he had invested in the Davis mortgage; during all of which time, of course, he knew that his title to this mortgage had been transferred to Latch. When he undertook to take the mortgage for the Bickley estate he was confronted with the fact of the prior assignment. Whether he acted as principal or agent, therefore, in behalf of the Bickley estate the transaction is tainted with fraud because of this knowledge. As principal he, of course, had knowledge of title in another; as agent his principal was chargeable with notice of anything affecting the validity of the transaction coming to the knowledge of the agent while the proceeding was pending: Johnston v. Laflin, 103 U. S. 800; Columbian Bank's Estate, 147 Pa. 422. It is argued that any fraud perpetrated was against the Latch estate, inasmuch as Jones did not report to Latch the payment made on the Wilde mortgage. But this omission did the Latch estate no harm. The wrong was done when Jones attempted to make a second sale of the mortgage. The omission of Jones to notify Latch that he had assigned to him the Mable Davis mortgage was unbusinesslike, but as he had other documents of Latch under his control there was no irregularity or impropriety in retaining the assignment in his possession with the other papers. There is no evidence that Latch knew the assignment was in Jones' possession and no neglect is attributable to him. The assignment was not a secret document as suggested by the appellant. If it is to be so considered the Bickley assignment was in like condition, for the papers were both in Jones' possession, and so far as appears in the case, their existence was not known to any other person than him up to the time of his death. The appellant can only claim through Jones. He was the active executor and trustee. Not a step can be taken without proving that he had authority to make the investment for the Bickley estate. He acted on his own judgment; exercised his own discretion; had the legal authority so to do and took the title in his own name and that of his cotrustee. It is a proposition not to be tolerated that in so doing he could give to the estate of which he was the legal representative a good title to property, the transfer of which would amount to a larceny as against the Latch estate. The evidence admitted was competent and the case was well decided.

The judgment is affirmed.